# United States Court of Appeals
## For the First Circuit

No. 17-1505

AIG PROPERTY CASUALTY COMPANY,

Plaintiff, Appellant,

v.

WILLIAM H. COSBY, JR.,

Defendant, Appellee,

BARBARA BOWMAN, TAMARA GREEN, ANGELA LESLIE, KATHERINE MAE
MCKEE, LOUISA MORITZ, KRISTINA RUEHLI, THERESE SERIGNESE, JOAN
TARSHIS, LINDA TRAITZ,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

Michael F. Aylward, with whom William A. Schneider,
Morrison Mahoney LLP, Rebecca R. Weinreich, Steven V. Kovarik,
and Lewis Brisbois Bisgaard Smith LLP were on brief, for
appellant.
Kirk A. Pasich, with whom Pamela M. Woods, Mikaela

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

Gallagher-Whitman, Pasich LLP, Francis D. Dibble, Jr., John M. Greaney, Elizabeth S. Zuckerman and Bulkley, Richardson & Gelinas, LLP were on brief, for appellee.

_____

June 7, 2018

_____

**SOUTER**, **Associate Justice**.    In this declaratory judgment action, plaintiff AIG Property Casualty Company appeals from a judgment that it has a duty to defend the policyholder, defendant William H. Cosby, Jr.  We affirm.

Over the past decade, a number of women have accused Cosby of sexual assault.  In 2014 and 2015, nine of them, also defendants here, filed three separate actions claiming that Cosby had defamed them by publicly denying their accusations. At relevant times, Cosby held two insurance policies issued by AIG: a homeowners policy and a personal excess liability policy (the "umbrella policy").  Under each, AIG has a duty to "pay damages [Cosby] is legally obligated to pay [due to] personal injury or property damage caused by an occurrence covered[] by this policy anywhere in the world . . . ."  Both policies define "personal injury" to include "[d]efamation," and oblige AIG to pay the cost of defending against suits seeking covered damages.

When Cosby notified AIG of the underlying defamation suits, AIG initially agreed to defend him, subject to a reservation of rights that permitted the company to bring this action, seeking a declaration that the policies' "sexual misconduct" exclusions barred coverage.  The cited exclusion in the homeowners policy bars coverage for liability or defense costs "arising out of any actual, alleged[,] or threatened . . .

- 3 -

[s]exual molestation, misconduct or harassment[,] . . . or . . . [s]exual, physical or mental abuse."  And the umbrella policy similarly excludes coverage for liability or defense costs "[a]rising out of any actual, alleged[,] or threatened . . . [s]exual misconduct, molestation or harassment[,] . . . or . . . [s]exual, physical or mental abuse."  Contending that the underlying defamation claims arose out of Cosby's alleged sexual assaults, AIG moved for summary judgment on its declaratory judgment claim.  Cosby, for his part, moved to dismiss or, in the alternative, for judgment on the pleadings.  The district court treated his motion as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and held that the sexual-misconduct exclusions were at least ambiguous and consequently granted Cosby's motion insofar as it sought a judgment that AIG had a duty to defend.[1]

As with a dismissal under Rule 12(b)(6), we review a judgment on the pleadings de novo, "tak[ing] all well-pleaded facts in the light most favorable to the non-moving party and draw[ing] all reasonable inferences in that party's favor." Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 140 (1st Cir. 2016).

---

[1] By consent of the parties, the district court dismissed AIG's claim to the extent it sought a judgment that it owed no duty to indemnify, without prejudice to the filing of a new action if subsequent developments justified it.

- 4 -

The parties debate whether Massachusetts or California law governs the interpretation of the relevant insurance policies, with AIG arguing for Massachusetts on its understanding that its law requires a finding of no coverage. But we have no need to resolve that dispute because, simply by applying the law of Massachusetts as AIG asks, we conclude that AIG has a duty to defend Cosby.[2] For the same reason, it is unnecessary to address Cosby's arguments that AIG should be judicially estopped even from arguing that Massachusetts law applies.

"Under Massachusetts law, we construe an insurance policy under the general rules of contract interpretation[,] . . . begin[ning] with the actual language of the policies, given its plain and ordinary meaning." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000). "The insurer bears the burden of demonstrating that an exclusion exists that precludes coverage," however, "and any ambiguities in the exclusion provision are strictly construed

_____

[2] It is no surprise that AIG would prefer to avoid the application of California law. On the same day it commenced this action, AIG began a separate declaratory judgment proceeding against Cosby in federal court in California, seeking a declaration that it had no duty to defend or indemnify Cosby against a similar defamation action. AIG Prop. Cas. Co. v. Cosby, 2015 WL 9700994, at *1-2 (C.D. Cal. Nov. 13, 2015). Interpreting the same policy provisions at issue here, the California court applied California law and held that AIG had a duty to defend Cosby, given the ambiguity of the sexual-misconduct exclusions. Id. at *3-5.

against the insurer." Valley Forge Ins. Co. v. Field, 670 F.3d 93, 97 (1st Cir. 2012) (internal quotation marks omitted). Indeed, the general interpretive rule that "[a]mbiguous policy terms are construed in favor of the insured," Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009), "applies with particular force to exclusionary provisions," U.S. Liab. Ins. Co. v. Benchmark Const. Servs., Inc., 797 F.3d 116, 120 (1st Cir. 2015) (internal quotation marks omitted). "Ambiguity exists when the policy language is susceptible to more than one meaning." Scottsdale, 561 F.3d at 77.

There is no single definition of "arising out of" under Massachusetts law. The Massachusetts Supreme Judicial Court has said that the term "indicates a wider range of causation than the concept of proximate causation in tort law," Commerce Ins. Co. v. Ultimate Livery Serv., Inc., 897 N.E.2d 50, 62 (Mass. 2008) (internal quotation marks omitted), and that it "suggest[s] a causation more analogous to 'but for' causation," Fuller v. First Fin. Ins. Co., 858 N.E.2d 288, 292 (Mass. 2006) (internal quotation marks omitted). In a slightly earlier decision, however, the same court has taken care to note that "the expression does not refer to all circumstances in which the injury would not have occurred 'but for'" the excluded activity. Rischitelli v. Safety Ins. Co., 671 N.E.2d 1243, 1245 (Mass. 1996) (injuries resulting from fisticuffs that broke out after

- 6 -

vehicle collision did not "aris[e] out of the ownership, maintenance or use of an auto"). Rather, "there must be a sufficiently close relationship" or a "reasonably apparent" causal connection between the injury and relevant event. Commerce Ins. Co., 897 N.E.2d at 62 (internal quotation marks omitted). Ultimately, "[a] judgment call . . . must be made as to where the facts of the case fall along a continuum of causation." Am. Home Assur. Co. v. First Specialty Ins. Corp., 894 N.E.2d 1167, 1170 (Mass. App. Ct. 2008).

Here, AIG says that because Cosby's allegedly defamatory denials were prompted by the women's sexual-assault allegations, the defamation injury and the excluded conduct are so "inextricably intertwined" as to trigger the sexual-misconduct exclusions. Cosby counters that the source of the women's claimed injuries is not any alleged sexual misconduct, but rather the allegedly defamatory statements. Cf. Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 817 (Mass. 1999) ("It is the *source* from which the plaintiff's personal injury originates rather than the specific *theories of liability* alleged in the complaint which determines the insurer's duty to defend." (emphasis in original; internal quotation marks omitted)). Given the independent cause of injury, Cosby maintains, the causal link between the excluded conduct and the defamation claims is too attenuated to trigger the exclusions.

It is only fair to say that applying the quoted governing principles of Massachusetts law to this case does not supply an easy answer to the question before us. But we need not determine whether the homeowners policy's "arising out of" exclusion, standing on its own, would or would not eliminate coverage. Instead, a closer look at the umbrella policy provides a key to decision here.

As the district court observed, the presence of another, more broadly worded sexual-misconduct exclusion in the umbrella policy tips the scales in favor of finding ambiguity. That policy's coverage for "Limited Charitable Board Directors and Trustees Liability" is subject to an exclusion that applies to claims for damages "[a]rising out of, *or in any way involving*, *directly or indirectly*, any alleged sexual misconduct." RA at 328, ¶ D.10 (emphasis added). This provision has a place in the analysis here under the rule that "[e]very word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835, 844 (Mass. 2013) (internal quotation marks omitted); see also J.A. Sullivan Corp. v. Commonwealth, 494 N.E.2d 374, 378 (Mass. 1986). Given that this separate, specific sexual-misconduct exclusion was drafted so closely to a but-for view, the umbrella policy's more laconic, generally

applicable counterpart may most reasonably be read, in the circumstances of this case, as imposing a standard closer along the continuum to proximate causation than but-for, under that policy. And because both the umbrella and homeowners policies were drafted by the same insurer, and the policies were issued by it side by side to the same insured, we may infer that the two policies' identical "arising out of" language was intended to carry identical meaning, calling for identical effect. And if that meaning is not proximate cause outright, at a minimum it renders the pertinent sexual-misconduct exclusions ambiguous as to the question here, requiring judgment for the insured.[3]

To be clear, we do not hold that "arising out of" is an inherently ambiguous term under Massachusetts law or that discrepancies in insurance provisions always give rise to ambiguity. Rather, our holding is confined to this case where the ambiguity question is close to begin with and where another sexual-misconduct exclusion is worded more broadly.[4] Out of caution, we also note that this appeal decides only the question

---

[3] Notably, the same result would obtain under California law. See Safeco Ins. Co. of Am. v. Robert S., 28 P.3d 889, 893 (Cal. 2001) (ambiguities are resolved in favor of insured); Palmer v. Truck Ins. Exch., 988 P.2d 568, 572-73 (Cal. 1999) ("We must . . . give effect to every part of the policy with each clause helping to interpret the other." (internal quotation marks omitted)).

[4] In view of our holding, we need not reach Cosby's alternative grounds for affirmance.

of coverage in providing defense to the policyholder.  Coverage for any damages that may be awarded if the defense is unsuccessful could turn on facts beyond those pertinent here, requiring independent analysis.  <u>Cotter</u>, 984 N.E.2d at 850 (an "insurer's duty to defend is independent from, and broader than, its duty to indemnify" (internal quotation marks omitted)).

<u>Affirmed</u>.